# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN R. CORNELIUS, | ) | CASE NO. 3:21-CV-00958-JRK |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| Defendant, | | |

## I.  INTRODUCTION

Plaintiff Stephen R. Cornelius ("Mr. Cornelius") seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). (ECF Doc. 1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to a magistrate judge for preparation of a Report and Recommendation, and was subsequently reassigned to me pursuant to General Order No. 2022-14. For the reasons set for the below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.  PROCEDURAL HISTORY

On September 22, 2018, Mr. Cornelius filed an application for SSI, alleging a disability onset date of September 22, 2018. (Tr. 13, 204, 247).[1] His application was denied initially on

---

[1] The Transcript of the Proceedings before the Social Security Administration for this case can be located at ECF Doc. 9 on CM/ECF.

February 11, 2019, and upon reconsideration on April 3, 2019, and Mr. Cornelius requested a hearing before an administrative law judge ("ALJ"). (Tr. 83, 133). On December 6, 2019, an ALJ held a hearing, during which Mr. Cornelius, represented by counsel, and an impartial vocational expert testified. (Tr. 30-60). On February 5, 2020, the ALJ issued a written decision finding Mr. Cornelius was not disabled. (Tr. 10-25). The ALJ's decision became final on March 3, 2021, when the Appeals Council declined further review. (Tr. 1). Mr. Cornelius asserts the following assignment of error:

1. The ALJ's RFC determination is unsupported by substantial evidence as she failed to properly evaluate the opinion of treating medical source David Cooley, M.D.

(ECF Doc. 12-1, PageID#1473).

### III. BACKGROUND INFORMATION

#### A. Personal, Education, and Vocational Experience

Mr. Cornelius was born in June 1967, and he was 51 years old on the alleged onset date. (Tr. 23). Mr. Cornelius has a high school education, no college education, and lives alone with his service dog. (Tr. 38). Mr. Cornelius's past relevant employment was working as a store clerk. (*Id.*).

#### B. Relevant Hearing Testimony

##### 1. *Mr. Cornelius's Testimony*[2]

After his December 2017 back surgery, Mr. Cornelius testified that his back pain worsened. (Tr. 40). He stated that it is hard for him to sit still for very long, and he cannot stand for long. (*Id.*). Specifically, he said his ability to stand and sit had gotten worse since he was previously denied disability. (Tr. 41). He stated that he cannot stand or sit for more than 15 minutes and also uses a cane. (*Id.*). If he is going to sit for a long time, he needs to be in a reclining chair. (*Id.*). He testified that fluorescent lighting triggers his migraines. (Tr. 42). He also stated that he has not had

---

[2] This is a summary of the relevant testimony for Mr. Cornelius.

a migraine in the six months prior to his hearing. (Tr. 42). He further stated that he was not receiving any mental health treatment. (Tr. 44).

Mr. Cornelius testified that he experiences daily back pain, but does not take pain medication for this pain. (Tr. 47). He claimed the VA stopped sending him his pain medication "for some reason." (*Id.*). He stated he drinks a few beers to make his back feel better. (*Id.*). He also uses a TENS unit and heating pad. (Tr. 48). He stated that he uses a chair in the shower and also he uses a chair for cooking. (Tr. 50-51).

### 2. *Vocational Expert's Testimony*

The ALJ asked the vocational expert ("VE") to consider a person with Mr. Cornelius's age, education, and vocational background who was physically limited in the way in which the ALJ determined Mr. Cornelius to be limited. (Tr. 56-57). The VE opined that such an individual could not perform Mr. Cornelius's past work. (Tr. 57). He opined that the hypothetical individual could perform the following other jobs: housekeeping/cleaner, sorter, and merchandise marker. (*Id.*). If an individual had to be off task 10 percent of the work period or greater, the VE opined that all work would be precluded. (Tr. 58). If an individual were to be absent more than one day per month, the VE testified that all work would be precluded. (Tr. 59).

### C. Relevant Medical/Non-Medical Opinion Evidence

#### 1. *State Agency Medical Consultants*

##### a. Diane Manos, M.D and William Bolz, M.D.

Dr. Manos opined that Mr. Cornelius could lift 20 pounds occasionally and 10 pounds frequently, could stand for six hours in an eight-hour workday, and could sit for six hours. (Tr. 77). She further found that Mr. Cornelius could only occasionally use foot controls on the left and frequently reach overhead on the left side. (Tr. 77-78). She also found Mr. Cornelius could

3

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but he could never climb ladders, ropes, or scaffolds. (Tr. 78). Finally, she found Mr. Cornelius should avoid concentrated exposure to hazards and extreme cold, avoid unprotected heights and heavy moving machinery, and only have occasional exposure to cold temperatures below 32 degrees. (Tr. 79). Dr. Bolz affirmed the findings of Dr. Manos. (Tr. 102-04).

### b. Jamie Lai, Psy.D. and Ernias Seleshi, M.D.

Dr. Lai opined Mr. Cornelius had no limitations in his ability to understand, remember, or apply information, no limitations in his ability to adapt or manage himself, and mild limitations in his ability to interact with others and concentrate, persist, and maintain pace. (Tr. 73-75). She further found Mr. Cornelius had no severe mental impairments. (*Id.*). Dr. Seleshi affirmed Dr. Lai's findings. (Tr. 98-100).

### 2. *David Cooley, M.D.*

On June 6, 2018, Dr. Cooley opined that Mr. Cornelius could not lift more than 25 pounds. (Tr. 1332).

On October 24, 2018, Dr. Cooley opined that Mr. Cornelius could sit two hours and stand/walk two hours in an eight-hour workday, with unscheduled breaks every 15 to 20 minutes for 10 to 15 minutes. (Tr. 1280). Dr. Cooley further opined that Mr. Cornelius's symptoms associated with his impairments were severe enough to frequently interfere with the attention and concentration required to perform simple work-related tasks. (*Id.*). He indicated that Mr. Cornelius would need to recline or lie down during an eight-hour workday in excess of the typical breaks allowed. (*Id.*). He also opined that Mr. Cornelius should be limited to frequent lifting and carrying less than 10 pounds; occasionally up to 10 pounds; and never 20 or 50 pounds. (*Id.*). Finally, Dr. Cooley opined that Mr. Cornelius would be absent more than four times per month. (Tr. 1281).

4

### D. Relevant Medical Evidence

In this proceeding, Mr. Cornelius primarily challenges the ALJ's findings with respect to his degenerative disc disease of the lumbar spine and status post laminectomy surgery. The ALJ summarized Mr. Cornelius's health records and symptoms related to these issues as follows:

> The claimant, a 52-year-old male, alleged disability due to knee problems, back problems, and depression. (D2E). At the hearing, the claimant testified that since the last Administrative Law Judge decision in October 2016, his conditions have become worse. He had back surgery in December 2017 in which he stated his pain was actually worse as a result and his ability to stand, walk, and sit was also worse. He stated he had back pain every day, although, he did not currently take any pain medication. Having a few beers would help relax his back enough to help reduce pain; he uses a heating pad; and a TENS unit helped. He said he tried to lay down as much as possible on the sofa or in his reclining chair. To assist with ambulation, the claimant has used a cane since 2004. He said he had not seen his back surgeon in almost a year. The claimant testified that he had not had a migraine in almost six months. Certain lights such as florescent lighting, sun glare, or the brightness reflecting from snow could trigger migraines. About a year ago, the claimant had his most recent seizure that was brought on by a migraine. He said he took medication to help prevent seizures. Since September 3, 2018, the claimant has not smoked cigarettes in which he stated he felt a little bit better.
>
> Regarding mental health, the claimant stated that he did not receive counseling because the Veteran's Administration ("VA") and his Molina insurance told him that it was not covered. The claimant was not taking mental health medications either. He said that at times, he had problems with anxiety and depression as he found himself isolating from others. He testified that he could leave his home for medical appointments, court hearings, grocery shopping, and a restaurant as long as he could have his back against the wall.
>
> …
>
> Prior to the alleged onset date, the claimant underwent surgery on his lumbar spine in December 2017 due to degenerative disc disease and multilevel stenosis. (D1F/48-50). X-rays taken following the surgery, February 2018, showed hardware from the laminectomy in place; no acute fractures; moderate disc space narrowing at L1-L2 and L2-L3 with moderate hypertrophic spurring. (B1F/84). Then in September 2018, another x-ray was performed that confirmed stable multilevel degenerative spondylosis. (D8F/29-30).
>
> Following the surgery, the claimant still reported pain for which his neurosurgeon, Dr. Cooley, M.D., prescribed oxycodone for several months. (D6F; D8F/4-10). The claimant stated that he noticed increased back pain when the temperature changed

and he presented at appointments wearing a back and left knee brace and walking with a cane. (D8F/4-8). Examinations showed that he had no foot drop; he had five out of five strength in the right lower extremity and four out of five in the left; and there was good strength in the bilateral upper extremities. (D8F/4, 10). Dr. Cooley referred him to pain management in February and May 2018, but the record did not support that he followed through. (D8F/6, 10).

At a yearly primary care physician visit in March 2018, the claimant reported that he still had chronic lower back pain after the surgery, but it was better and he had no radiation of pain down his left leg. (D6F/173, 176). However, he stated that he had pain in his left knee for which he wore a knee brace. (Id.). Regarding, his chronic obstructive pulmonary disease (COPD), the claimant said he had his inhalers, if needed, but he had no breathing problems. (*Id*.). Examination supported the claimant walked with a cane; he had no swelling of the extremities; there was restricted range of motion in the left knee; and he was slightly tender in the lower back (he was also wearing a back brace). (D6F/175). His doctor provided an order for him to receive a new knee and back brace. (D6F/29; D8F/169). The record did not support that the claimant's cane was prescribed. The claimant admitted having depression and post-traumatic stress disorder (PTSD) but he refused to see the mental health clinic. (D6F/176).

The claimant went to urgent care in September 2018 because of increased back pain in which he was requesting to see pain management. (D6F/92-93). Examination showed he was resting comfortably and in no acute distress and his lungs were clear to auscultation bilaterally. (D6F/94). His lower back was tender around lumbar facets and also paraspinal area. He was unable to do straight leg rising because of pain and it was noted that he was wearing a back brace. (Id.). The claimant was referred to pain management and discharged in stable condition. (D6F/95).

A note in the record in November 2018 stated the claimant requested a refill of oxycodone; however, the doctor explained that the request would be denied since a test two months prior showed a positive screen for alcohol as well as oxycodone/opiates. (D5F/22). The doctor told the claimant it was dangerous to combine alcohol and narcotics; the claimant said "ok" and abruptly ended the call by hanging up. (Id.).

The claimant went through a smoking cessation program at the VA in which he last had a cigarette on September 3, 2018 (he was a 36-year, 1 to 2 pack per day smoker). (D8F/42-43). In December 2018, he reported that he had not had problems with anxiety, depression, stress, frustration, anger, or irritation. (Id.). The mental status examinations at multiple smoking cessation therapy appointments indicated that the claimant had intact recent and remote memory, intact attention span and concentration, fair insight and judgment, euthymic/normal mood, cooperative behavior, logical associations, and normal and appropriate thought process and content. (D2F/28-29; D5F/17-18, 27-28; D6F/45-46, 54-55, 67-68). Those

examinations also noted the claimant had a steady gait, normal movement, and upright station. (*Id.*).

In October 2018, the claimant brought a mental capacity assessment form for the VA to complete for his Social Security disability claim, but he admitted that he had only engaged in mental health services intermittently. (D5F/31). The provided did not complete the paperwork since he had not received mental health services since 2015, however, they would reconsider the assessment if he reengaged with treatment. (D5F/32).

(Tr. 19-21).

## IV. THE ALJ'S DECISION

In her February 5, 2020, decision, the ALJ made the following findings:[3]

1. The claimant has not engaged in substantial gainful activity since September 22, 2018, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: chronic obstructive pulmonary disease; tobacco use disorder, moderate dependence; left shoulder degenerative joint disease; degenerative joint disease bilateral knees; degenerative disc disease of the lumbar spine, status post laminectomy surgery; migraine headaches; history of seizure disorder; depression; anxiety disorder; personality disorder; and posttraumatic stress disorder. (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: occasionally operate foot controls on the left; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequent overhead reaching on the left; occasional exposure to extreme heat and cold; only occasional exposure to fumes, odors, dusts, and gases; only occasional exposure to unprotected heights and dangerous machinery; capable of understanding, remembering, and carrying out simple tasks that are not fast paced meaning the pace of productivity is not dictated by an external source over which he has no control; occasional interaction with coworkers, supervisors, and the public; and limited to a work routine that is repetitive from day to day with few and expected changes.

---
[3] The ALJ's findings are summarized.

7

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born [in June 1967] and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 22, 2018, the date the application was filed (20 CFR 416.920(g)).

(Tr. 16-24).

V. **LAW AND ANALYSIS**

A. **Standard of Review**

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931,

8

937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").
Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

### B. Standard for Disability

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C. Weighing of Dr. Cooley's Opinion

#### 1. *Parties' Arguments*

##### a. Mr. Cornelius's Arguments

Mr. Cornelius asserts that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ failed to apply proper legal standards in weighing Dr. Cooley's treating opinion. (ECF Doc. 12-1, PageID#1474). Specifically, Mr. Cornelius asserts that the ALJ's reasons for finding Dr. Cooley's opinion unpersuasive—the fact that Dr. Cooley's October 2018 opinion is off by 5 pounds—did not comply with the regulations. (*Id.*). He contends that Dr.

10

Cooley's October 2018 opinion, in which Dr. Cooley determined Mr. Cornelius could never lift more than 10 pounds occasionally and never 20 pounds or more, is consistent with Dr. Cooley's later opinion. (*Id.*). Thus, he asserts the fact that Dr. Cooley's later opinion is off by 5 pounds does not demonstrate "total inconsistency." (*Id.*).

Mr. Cornelius also disputes the ALJ's conclusion that Dr. Cooley's opinion was inconsistent because on the date Dr. Cooley completed his opinion (October 24, 2018), Dr. Cooley noted that Mr. Cornelius had "good strength in both upper extremes, full strength in his right lower extremity, and four out of five strength in his left lower extremity." (*Id.* at 1475 (citing Tr. 22)). He contends that the ALJ engaged in a selective review of the record, *i.e.,* "cherry picking." (*Id.*). He points to the following evidence as consistent with Dr. Cooley's opinion: (1) Dr. Cooley's treatment note noting that Mr. Cornelius walked with a cane and utilized a back brace; and (2) Dr. Cooley referring Mr. Cornelius to a pain clinic for his lower back pain. (*Id.* (citing Tr. 1285). Moreover, Mr. Cornelius also cites the following evidence in support of Dr. Cooley's opinion:

- On December 14, 2017, Dr. Cooley noted Mr. Cornelius had an injury in 1987 when a support beam fell on his back which was during his military service. (Tr. 1292).

- Mr. Cornelius had been experiencing severe pain since the accident which had gotten worse over the last several years to the point that it had become intractable. (Tr. 1292).

- On May 2, 2017, an MRI of the lumbar spine was consistent with moderate spondylosis at L2-L3. (Tr. 1365).

- On February 16, 2018, Mr. Cornelius underwent an x-ray, which revealed evidence for prior posterior lumbar fusion L2-S1, several laminectomy defects were present, moderate disc space narrowing L1-2 and L2-3, moderate hypertrophic spurring at L1-2 and L2-3 levels anteriorly, and slight reversal of the upper lumbar lordosis which was unchanged. (Tr. 392).

- On April 16, 2018, examination of Mr. Cornelius's showed he had a restricted range of motion. Examination of his back revealed slightly tender lower lumbar area. (Tr. 1265).

11

- On September 24, 2018, Mr. Cornelius underwent an x-ray of the lumbar spine which showed disc and endplate changes with spurring involving the lower thoracic spine segments. (Tr. 1310-11).

Finally, Mr. Cornelius asserts that the ALJ's failure to properly weigh Dr. Cooley's opinion was harmful. (ECF Doc. 12-1, PageID#1476). He contends that if Dr. Cooley's opinion had been properly evaluated by the ALJ, he would not even be able to engage in sedentary work, meaning that he would have been found disabled. (*Id.*). Further, he asserts that Dr. Cooley opined that Mr. Cornelius would likely be absent from work due to impairments or treatment more than four times a month. (*Id.*) (citing Tr. 1280-81). According to the VE's testimony, Mr. Cornelius asserts that if an individual were to be absent more than one day per month, all work would be precluded, meaning that he would not be able to engage in full-time employment and he would be found disabled. (*Id.* at 1476-77) (citing Tr. 59). Thus, Mr. Cornelius maintains that this is an error that merits remand. (*Id.* at 1477).

In his reply brief, Mr. Cornelius largely reiterates the arguments from his merits brief. (*See* ECF Doc. 16, PageID#1502-04).

### b. The Commissioner's Arguments

The Commissioner asserts that substantial evidence supports the ALJ's determination that Mr. Cornelius was not disabled and could perform a reduced range of light work, despite his physical limitations. (ECF Doc. 15, PageID#1490). First, the Commissioner contends that in determining Mr. Cornelius could perform a range of light work, the ALJ carefully set forth Mr. Cornelius's treatment history in the record. (*Id.* at 1490-91). Based on the ALJ's cited evidence, the Commissioner argues that Mr. Cornelius has not explained how the body of evidence put forth by the Commissioner required the ALJ to reach a different conclusion. (*Id.* at 1491). Next, the Commissioner asserts that the ALJ also reasonably found Dr. Cooley's October 2018 opinions

12

unpersuasive and inconsistent with Dr. Cooley's own prior June 2018 opinion, despite a lack of any medical evidence showing a deterioration of Mr. Cornelius's condition. (*Id.* at 1491-93).

### 2. *Legal Standard*

At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The revised regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). If the ALJ finds that two or more medical opinions "are both *equally well-supported and consistent* with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted) (emphasis added). Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record. 20 C.F.R. § 404.1520c(c)(3)-(5). Consistency concerns the degree to which the opinion reflects the same limitations described in evidence from other sources, whereas supportability concerns the relevancy of objective medical evidence and degree of explanation

13

given by the medical source to support the limitations assessed in the opinion. *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

### 3. *Dr. Cooley's Medical Opinion*

On October 24, 2018, Dr. Cooley set forth the following opinion on Mr. Cornelius's limitations:

> Mr. Cornelius could sit two hours and stand/walk two hours in an eight-hour workday, with unscheduled breaks every 15 to 20 minutes for 10 to 15 minutes. He should be limited to frequent lifting and carrying less than 10 pounds; occasionally up to 10 pounds; and never 20 or 40 pounds. He would need to recline or lie down during an eight-hour workday in excess of typical breaks. His symptoms were severe enough to interfere with his attention and concentration such that he should be limited to simple work-related tasks frequently. He would be absent more than four times per month.

(Tr. 1280-81).

### 4. *ALJ's Decision*

The ALJ explained that she found Dr. Cooley's unpersuasive because:

> Neurosurgeon, David Cooley, M.D., completed a physical assessment questionnaire on October 24, 2018. (D7F). Dr. Cooley opined that the claimant's symptoms were severe enough to interfere with attention and concentration required to perform simple work-related tasks frequently. He stated the claimant would need to recline or lie down during an eight-hour workday in excess of typical breaks; he could sit two hours and stand/walk two hours in eight - hour workday, with unscheduled breaks every 15 to 20 minutes for 10 to 15 minutes. Dr. Cooley further opined that the claimant would be limited to frequent lifting and carrying less than 10 pounds; occasionally up to 10 pounds; and never 20 or 50 pounds. The doctor did not indicate[] that the claimant had no manipulative limitations, but he opined that he would be absent more than four times per month.
>
> This opinion was not persuasive because it was inconsistent with Dr. Cooley's treatment notes on the claimant and it was inconsistent with the overall record. For example, on June 7, 2018, Dr. stated that the claimant could not lift more than 25 pounds. (D8F/51). This contradicts his opinion that the claimant could lift no more than 10 occasionally and never 20 pounds or more. (D7F/3). Furthermore, on the same day Dr. Cooley completed his opinion (October 24, 2018), he examined the claimant in which he noted he had "good strength in both upper extremities," full strength in his right lower extremity, and four out of five strength in his left lower extremity. (D8F/4). Regarding Dr. Cooley's opinion about frequent interference

14

>with attention and concentration, the claimant stated in his function report that he watch television for most of the day and he was constantly playing games or using Facebook on his phone. (D4E/5). In addition, he reported that he liked to bake breads and pies and crochet on occasion for a hobby. (*Id.*). He testified that he enjoyed and took pride in cooking and would do so for about an hour once or twice per week (alternating between sitting and standing due to pain). (Hearing Testimony). These activities are not consistent for someone who would have frequent interference with attention and concentration. Moreover, the claimant stated that he could finish what he started and his attention depended on whether he was interested in something. (D4E/6).
>
>Dr. Cooley's opinion in June 2018 stating the claimant could not lift more than 25 pounds is somewhat persuasive as it supported the claimant could perform necessary lifting to engage in light exertional level work. (D8F/51). Additionally, on December 18, 2017, four days after the claimant's lumbar laminectomy surgery, Dr. Cooley placed him on restrictions of no lifting, driving, or strenuous exercise. (D8F/24). This was not very persuasive the claimant had just had surgery several days prior, and it would be reasonable for someone to significantly limit their activity in order to properly heal.

(Tr. 22-23).

### 5. *Analysis*

As an initial matter, Mr. Cornelius's "cherry picking" argument is not well-taken. An ALJ may not cherry pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding. *See, e.g.*, *Gentry v. Comm'r*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where ALJ failed "to address certain portions of the record, including evidence of a continuing illness that was not resolved despite use of increasingly serious and dangerous medications"). Yet, "the ALJ does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position." *Solembrino v. Astrue*, No. 1:10-cv-1017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011). The Sixth Circuit has explained that allegations of cherry-picking evidence by the ALJ are "seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)).

15

Moreover, it is well settled that an ALJ need not discuss every piece of evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts."). Here, the ALJ discussed Mr. Cornelius's treatment history, including the majority of Mr. Cornelius's cited evidence, in her summary of the medical evidence. Specifically, in the ALJ's summary of the medical evidence, she discussed: (1) Dr. Cooley's treatment notes that Mr. Cornelius walked with a cane and utilized a back brace ; (2) Dr. Cooley referring Mr. Cornelius to a pain clinic for his chronic lower back pain; (3) Mr. Cornelius's February 16, 2018, x-ray results; and (4) Mr. Cornelius's September 24, 2018, x-ray results. (Tr. 20).

While the ALJ did not discuss the remaining two pieces of evidence that Mr. Cornelius cites, an ALJ is not required to cite every piece of evidence submitted by a party. *See Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 194 (6th Cir. 2020) ("An ALJ need not discuss every piece of evidence in the record for [the ALJ's] decision to stand.") (quoting *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) (further citation omitted)). Although discussion of this evidence was not repeated as part of the ALJ's consistency analysis, the court may read the ALJ's decision as a whole and with common sense. *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010). A broader reading of the ALJ's decision demonstrates that the ALJ considered the evidence Mr. Cornelius believes supports his disability. "Rather than describing the ALJ's action as 'cherry picking,' the Sixth Circuit has explained that it could be neutrally described as 'weighing the evidence.'" *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-2313, 2013 WL 943874,

16

at *6 (N.D. Ohio Mar. 11, 2013) (quoting *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)).

Mr. Cornelius's argument that the ALJ failed to adequately explain how Dr. Cooley's October 2018 opinions were inconsistent with his earlier June 2018 opinion that Mr. Cornelius could lift 25 pounds and the record generally is also not well-taken. In the ALJ's analysis, the ALJ described how Dr. Cooley's October 2018 medical opinion was unpersuasive with his own treatment notes and the record as a whole. (Tr. 22-23). There, the ALJ noted that Dr. Cooley's June 2018 opinion indicated that Mr. Cornelius could lift up to 25 pounds. Then, the ALJ compared Dr. Cooley's June 2018 opinion to his subsequent October 2018 medical opinion. On October 24, 2018, Dr. Cooley examined Mr. Cornelius and authored his medical opinion that same day. Dr. Cooley observed that Mr. Cornelius had good strength in both arms, no foot drop, full strength in his right leg, and four out of five strength in his left leg. (Tr. 20 (citing Tr. 1285)).

Significantly, as stated above, the ALJ did discuss Mr. Cornelius's February 2018 x-ray and Dr. Cooley's referring Mr. Cornelius to pain management. (Tr. 20). His x-ray revealed that hardware from his laminectomy was in place, no acute fractures, and moderate disc space narrowing at L1-L2 and L2-L3 with moderate hypertrophic spurring. (Tr. 20, 392). Regarding Dr. Cooley's pain management referral, the ALJ acknowledged this fact but noted that the record did not support that Mr. Cornelius followed through on the recommended pain management. (Tr. 20, 1287, 1291). Although these records were not explicitly mentioned in the ALJ's consistency analysis, the Sixth Circuit has held that an ALJ need not "reproduce the list of these treatment records a second time when [she] explain[s] why [an] opinion was inconsistent with this record." *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 467 (6th Cir. 2016). A review of the record and the ALJ's decision reveals that the ALJ appropriately discussed the relevant evidence and findings

17

earlier in the decision, in support of the RFC determination. (Tr. 20-21). In sum, the ALJ provided an adequate explanation regarding why Dr. Cooley's October 2018 opinions were not supported by the medical evidence and were inconsistent with his June 2018 opinions.

Finally, the ALJ presented ample substantial evidence in support of her conclusion that Mr. Cornelius could perform a range of light work. Specifically, the ALJ outlined Mr. Cornelius's treatment history. She noted that in December 2017, a year prior to the alleged onset date, Dr. Cooley performed lower back surgery on Mr. Cornelius. (Tr. 20) (citing Tr. 365-68). The ALJ also noted that Mr. Cornelius's February 2018 x-ray revealed hardware from his laminectomy in place, no acute fractures, and moderate disc space narrowing, and spurring at two levels. (Tr. 20) (citing Tr. 392). She also drew attention to Dr. Cooley referring Mr. Cornelius to pain management in February and May 2018, but additionally noted that the record did not reflect that Mr. Cornelius followed through on the recommendation. (Tr. 20) (citing Tr. 1287, 1291). The ALJ discussed Mr. Cornelius's September 2018 x-rays and noted that it confirmed stable multilevel degenerative spondylosis. (Tr. 20) (citing Tr. 1310-11). At his October 2018 examination with Dr. Cooley, Dr. Cooley observed that Mr. Cornelius had good strength in both arms, no foot drop, full strength in his right leg, and four out of five strength in his left leg. (Tr. 20 (citing Tr. 1285)). This visit was noted by the ALJ to be the last time that Mr. Cornelius had visited Dr. Cooley. (Tr. 19).

Furthermore, the ALJ presented substantial evidence in reaching her conclusion that Dr. Cooley's opinion about frequent interference with attention and concentration was inconsistent. Specifically, she pointed out that several of Mr. Cornelius's reported activities were not consistent for someone who would have frequent interference with attention and concentration. For example, the ALJ pointed out that Mr. Cornelius reported activities of daily living such as watching television for most the day, constantly playing games/using Facebook on his phone, crocheting on

occasion, and baking breads and pies. (Tr. 22 (citing Tr. 264)). In addition, the ALJ even noted that Mr. Cornelius stated that he could finish what he started, and his attention was dependent on whether he was interested in something. (*Id.* (citing Tr. 265)).

While this Report and Recommendation acknowledges there is some evidence that supports Mr. Cornelius's view, the Court nonetheless must affirm where the ALJ's decision is supported by substantial evidence, as there is a "zone of choice within which the decisionmaker[] can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). In this case, substantial evidence supports the ALJ's conclusion that Dr. Cooley's physical capacity opinions were unpersuasive. Accordingly, I recommend that the Court reject Mr. Cornelius's sole assignment of error because it lacks merit.

## VI. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court OVERRULE Mr. Cornelius's assignment of error and AFFIRM the Commissioner's decision.

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge,

> making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

Dated: February 1, 2023

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge